## KAIME v. HARTY *et al., Plaintiffs in Error.*

1. **Dedication to Public Use:** EXECUTORS. An executor has no power to dedicate land of the estate to public use, unless there be some provision in the will or an order or decree of a court of competent jurisdiction authorizing it.

2. **Dedication by Concurring acts of the Owner and the Public.** The owner of a tract of land intending to give a strip off of it for part of a public street, set back his fence, and from that time forward for eighteen years the strip was open and used by the public as a highway. *Held,* that these facts constituted a dedication.

3. ——: BY DEED. A person claiming to own a tract of land undertook by agreement with the owner of the adjoining tract to establish a public street on the line between them, to be sixty feet wide, each to give a strip thirty feet in width. Subsequently the true owner of the first named tract conveyed the whole of the tract except the thirty foot strip, the deed calling for the street by name as the boundary of the land conveyed. *Held,* that this amounted to a ratification of the first dedication, and was a valid dedication by deed. Subsequently the city caused the street to be graded to the full width of the sixty feet. *Held,* that this was an acceptance of the dedication.

*Error to St. Louis Court of Appeals.*

REVERSED.

*Leverett Bell* for plaintiffs in error.

*Fisher & Rowell* for defendant in error.

HENRY, J.—This suit was to enjoin the city of St. Louis and Harty from macadamizing, curbing and laying down sidewalks on a street called "Hogan avenue," which work Harty was proceeding with, under a contract with the city. A perpetual injunction was granted by the circuit court. The court of appeals affirmed the judgment; and defendants have brought the cause here by writ of error.

The plaintiff claims to be the owner of a parcel of land, the northern thirty feet of which forms the south half of Hogan avenue, and the material question is, whether

there has been a dedication to the city of the strip in question and of one of equal length and width north adjoining it. The city relied upon a plat of " Vandeventer Place," executed and filed in 1870, by Wm. Vandeventer for himself, and also in connection with three other parties, as executors of the last will of Peter Vandeventer, upon which the north half of the alleged Hogan avenue is designated as follows : " Proposed Hogan avenue."

No authority of the executors to make such dedication was shown, and in the absence of a provision of the will, and an order or decree of the court having jurisdiction to make it, authorizing such a disposition of the testator's land, the executors had no such power over the estate.

But while the claim of the city under this plat cannot be maintained, the evidence shows that in 1857 or 1858 Peter Vandeventer, who owned the land on the north, and John Hogan, who claimed to own the land on the south of the north line of survey 1660, agreed to open the street in question, and each, as Hogan and others testified, moved his fence back thirty feet from the line between them, and from that time forward the north, or Vandeventer half of the street, was open and used by the public as a highway. There is a conflict of evidence as to whether the south or Hogan half was thrown out and used as a street by the public. There was, however, a dedication of the north half, and the facts with regard to the dedication of the other half, aside from evidence of its use as a highway by the public, are as follows : Hogan claimed the land under a deed from Joseph and Marie Garnier, the latter of whom, it is conceded, owned the land prior to the execution of the deed to Hogan, in which there was a reservation of the front or eastern part of a lot of two by forty arpents. It was a question whether this reservation did not embrace the land claimed by Hogan and conveyed by him to plaintiff in 1865, and, for this reason we conjecture, Marie Garnier joined with Hogan and wife in the execution of the deed to plaintiff, in which the land conveyed is described as fol-

lows : "Beginning at a point in the west line of Grand avenue where the south line of said survey 1660 intersects. the same, thence northwardly on the said west line of Grand avenue 355 feet to the south line of Hogan avenue, thence with the south line of Hogan avenue westwardly 550 feet to the east line of land of Hereford, thence with the east line of Hereford land and at a distance of 550 feet from the west line of Grand avenue southwardly 355 feet to the south line of said survey 1660, thence with the south line of said survey eastwardly 550 feet to the beginning." It is admitted by plaintiff in his testimony, and other evidence fully establishes the fact, that the eastern line of the parcel conveyed to him running north from the beginning point on the west line of Grand avenue 355 feet, would terminate thirty feet south of the northern line of survey 1660, which is the division line between the Vandeventer and Garnier tracts. Conceding that in 1857 or 1858, when Hogan moved his fence back thirty feet from the north line of survey 1660, he was not the owner of the land, and that the title was in Marie Garnier, yet by that deed from her and Hogan and wife to the plaintiff she ratified and confirmed the dedication made by Hogan while he was in possession, by recognizing Hogan avenue as a street sixty feet wide occupying thirty feet of her land. It was a dedication by deed.

The plaintiff subsequently, on several occasions, recognized it as a public street. In 1871, by a contract with the city engineer, he agreed, in consideration of permission given him by the city engineer to construct a temporary roadway into his premises on the south side of Hogan avenue west of Grand avenue, to remove at his own cost, so much of the bank of earth as would encroach upon and obstruct Hogan avenue whenever the city engineer should notify him to do so, or the city should order the curbing, guttering, macadamizing, etc., of said portion of Hogan avenue. And in 1874 he signed a petition to,

the county court of St. Louis county asking that Hogan avenue be opened as a county road.

Whether he is now estopped from asserting that there is no such street, is a question which we deem it unnecessary to consider, because we are of the opinion that the deed under which he claims, from Hogan and wife and Marie Garnier, by its distinct recognition of Hogan avenue, as a public street, and conveying to him only the land to a line thirty feet south of the north line of survey 1660, and recognizing the strip between those two lines as a part of Hogan avenue amounts to a dedication of that strip to the city for a street. The Vandeventer strip of thirty feet was accepted by the public by its public use as a street from 1857 continuously, and so we are inclined to believe from the evidence, was the south or Hogan half, but whether this half was or not, in 1870 the city authorities accepted the dedication made by Marie Garnier and Hogan and wife by grading the avenue its full width, sixty feet, within the city.

Who owns the strip in question? Certainly the plaintiff does not, for it is outside the boundaries of the tract conveyed to him. John Hogan does not since his deed to plaintiff, if he ever did, nor can Mrs. Garnier, who was once the owner, assert her title against the city's claim, because in the deed executed by her and Hogan and wife to the plaintiff, they distinctly recognized its dedication to the city made by Hogan in 1857 or 1858. The fact that Mrs. Garnier was a party to that deed must have escaped the attention of both the circuit court and the court of appeals. The judgment is reversed and the bill is dismissed. All concur.